# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO
# ALBUQUERQUE

| | |
|---|---|
| CHRISTINE LIZOTTE, § | |
| § | |
| Plaintiff, § | Case No.: |
| § | |
| v. § | |
| § | |
| OPTUM CARE NEW MEXICO, LLC f/k/a § | **JURY TRIAL DEMANDED** |
| DAVITA MEDICAL GROUP NEW MEXICO, § | |
| LLC, § | |
| § | |
| Defendant. § | |

## COMPLAINT

Plaintiff CHRISTINE LIZOTTE ("Plaintiff"), by and through her attorneys, VALLI KANE & VAGNINI LLP, brings this action for damages and other legal and equitable relief from Defendant OPTUM CARE NEW MEXICO, LLC f/k/a DAVITA MEDICAL GROUP NEW MEXICO, LLC ("Defendant") for violation of the False Claims Act, as amended, 31 U.S.C. § 3730(h)(1)-(2), ("FCA"), for violation of New Mexico Common Law, and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1. This is a FCA retaliation action brought by Plaintiff against Defendant, her former employer. During the relevant time period, Plaintiff was employed by DaVita Medical Group New Mexico, LLC whose affiliated entities were the subject of several *qui tam* FCA actions over the years (*e.g.*, *U.S. ex rel. Gallian v. DaVita Rx, LLC*, No. 3:16-CV-0943 (N.D. Tex.); *U.S. ex rel. Vainer v. DaVita, Inc.*, No. 1:07-CV-2509 (N.D. Ga.); *U.S. ex rel. Barbetta vs. DaVita, Inc.*, Case No. 1:09-CV-02175 (D. Colo.)) for their alleged submission of false claims to the United States Government, which have settled for hundreds of millions of dollars. Upon information and belief,

DaVita Medical Group New Mexico, LLC became Optum Care New Mexico, LLC after Plaintiff's termination.

2. Specifically, from October 2018, to February 2019, Defendant employed Plaintiff as a Site Administrator at Lovelace Medical Center in Albuquerque, New Mexico.

3. While employed by Defendant, Plaintiff discovered that Defendant appeared to maintain a fraudulent Bed Count Summary Report (a list of patients Defendant allegedly was treating at any given time) and that it was performing more than one (1) wellness visit per every twelve (12) months for its Medicare Advantage B patients. Pursuant to 42 C.F.R § 410.15, however, Medicare Part B is to only pay for one (1) wellness visit every twelve (12) months. Thus, Plaintiff had an objectively reasonable good faith basis to believe that Defendant was fraudulently submitting claims to Medicare as a result of the false Bed Count Summary Report and for the multiple annual wellness visits.

4. Plaintiff lodged several complaints to Defendant regarding the foregoing. Thereafter, Defendant terminated Plaintiff in retaliation for her FCA and New Mexico Common Law protected complaints.

5. Plaintiff now brings this action pursuant to the FCA and New Mexico Common Law for her unlawful termination in retaliation for her protected complaints and is entitled to recover: (1) two times her back pay, (2) emotional damages, (3) front pay, (4) punitive damages, (5) attorneys' fees and costs, (6) interest, and (7) such other and further relief as this Court finds necessary and proper.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States,

and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 31 U.S.C. §§ 3729 *et seq.*

7. Venue is proper in this Court pursuant to 31 U.S.C. §§ 3729 *et seq.*, in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendant maintains facilities, conduct business and reside in this district.

8. The Court's supplemental jurisdiction is invoked to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

## THE PARTIES

9. Plaintiff is a citizen of New Mexico and resides in Placitas, New Mexico.

10. At all relevant times, Plaintiff was an employee of Defendant within the meaning of the FCA and New Mexico Common Law.

11. Upon information and belief, Defendant is incorporated under the laws of the state of Delaware and has its principal place of business in Albuquerque, New Mexico.

12. Defendant transacted business in New Mexico by employing Plaintiff and other employees in New Mexico. Defendant continues to transact business in New Mexico by employing persons and by owning and operating offices within the state of New Mexico.

13. At all relevant times, Defendant was an employer within the meaning of the FCA and New Mexico Common Law.

## STATEMENT OF THE FACTS

14. Defendant is engaged in the healthcare industry and provides healthcare services to the citizens of New Mexico.

15. On October 15, 2018, after being recruited from her long time prior position, Plaintiff began her employment for Defendant as a Site Administrator in Albuquerque, New Mexico.

16. Defendant paid Plaintiff a sign on bonus to entice her to leave her prior employment.

17. Plaintiff was never employed with Defendant as a Compliance Employee.

18. Plaintiff's job duties with Defendant did not include compliance.

19. Plaintiff was never assigned any compliance-related work by Defendant.

20. Defendant never trained Plaintiff on compliance or informed her that her job duties included performing compliance-related work.

21. In or around November 2018, Plaintiff received a bed-count summary report (the "Report") from Defendant that was approved by Dr. Lance Wilson ("Dr. Wilson"), Defendant's Chief Medical Officer.

22. The Report listed patients that Defendant was allegedly treating.

23. Upon discussing the Report with members of the Hospitalist team, Plaintiff uncovered that many of the patients listed in the Report were either no longer Defendant's patients or never were Defendant's patients.

24. Plaintiff confirmed her findings through the use of the Epic medical record software by cross-referencing the listed patients with Lovelace Medical Center's records. Plaintiff then made several complaints about the fraudulent Report to, among others, Dr. Ryan Tyner and Dr.

Maher Belmamoun, who were not Plaintiff's direct supervisors. Despite these complaints, no remedial action was taken.

25. Defendant was not treating all patients listed on the Report at the time Plaintiff discovered it was fraudulent.

26. Upon information and belief, some of the patients listed on the Report were insured through Medicare.

27. Plaintiff complained of the Report because of her concern that Defendant was billing Medicare for treating non-existent patients.

28. In December 2018, Plaintiff received Defendant's wellness clinic patient list (the "List") from Peter Conticelli ("Mr. Conticelli"), Defendant's Senior Manager.

29. After receiving the List, Plaintiff discovered that a large percentage of the Medicare patients were scheduled for a wellness visit despite having had a wellness visit a few months prior.

30. Defendant's wellness clinic, located in Albuquerque, New Mexico, was for Medicare Advantage B patients.

31. Defendant used Medicare to pay for the costs of the wellness visits at its wellness clinic.

32. At all relevant times, Plaintiff had knowledge that Defendant used Medicare to pay for the costs of the wellness visits at its wellness clinic.

33. Pursuant to 42 C.F.R. § 410.15, Medicare Part B is to only pay for one (1) wellness visit per patient per every twelve (12) months.

34. Plaintiff then informed Mr. Conticelli that Defendant was scheduling its Medicare patients for more than one (1) wellness over the twelve (12) month period prescribed by 42 C.F.R. § 410.15. Mr. Conticelli's only reply was, "It's a good list. That's the best that I can say."

35. Subsequently, Plaintiff participated in a conference call with Dr. Wilson, Brendan Dowling ("Mr. Dowling"), Defendant's Market President, and Heather Dountas, Defendant's Lead Clinician. During this conference call, Dr. Wilson and Mr. Dowling reaffirmed that the clinic's purpose was to provide Medicare patients with annual wellness visits. Plaintiff then complained again that the Medicare patients were being scheduled for wellness visits despite having had one only a few months prior. Dr. Wilson replied that her complaint was "immaterial" and Mr. Dowling mandated that Plaintiff "use the list."

36. In late January 2019, Plaintiff documented all Medicare patients that had more than one wellness visit per year and emailed her concerns to, among others, Mr. Dowling, Mr. Conticelli, and Defendant's Director of Comprehensive Health Assessment Programs for Nevada and Albuquerque, Zaid Malhees ("Mr. Malhees").

37. After her complaints, Mr. Dowling's attitude towards Plaintiff changed as he became hostile towards her and constantly criticized her patient volume, despite it being at approximately 85%, which was at or above normal.

38. Plaintiff subsequently met with Mr. Malhees to discuss the fraudulent wellness visits. Mr. Malhees concurred with Plaintiff's complaints and her findings.

39. On February 1, 2019, Plaintiff was summoned to a termination meeting with Mr. Dowling and Amanda Ross, Defendant's Director of Human Resources. At the commencement of the meeting, Mr. Dowling stated, "it's never good when HR has to come." He then stated, "It's just not working out." Thereafter, Plaintiff was terminated and Mr. Dowling immediately left the room.

40. Plaintiff lodged the foregoing complaints to Defendant in an effort to stop its alleged FCA violations and its alleged misuse of public funds.

41. Plaintiff did not have performance issues with Defendant.

42. Defendant never accused Plaintiff of having performance issues prior to her complaints.

43. Plaintiff received positive reviews regarding her work performance from her coworkers.

44. Plaintiff was never written up by Defendant.

45. Plaintiff had an objectively reasonable good faith basis to believe that Defendant was submitting false claims to the United States Government as Medicare covered the costs of the wellness visits and the treatment of many of Defendant's patients' at Lovelace Medical Center.

46. Plaintiff lodged the foregoing complaints to Defendant because of this objectively reasonable good faith basis.

47. Plaintiff was terminated in retaliation for her complaints to Defendant of its alleged submission of false claims to the United States Government, which is also a misuse of public funds.

48. Upon information and belief, Defendant had knowledge that Plaintiff's complainants were lodged in an attempt to stop it from submitting false claims to the United States Government as they concerned the improper treatment and/or false treatment of patients insured by Medicare.

49. Plaintiff would not have been terminated but for her complaints pursuant to the FCA and New Mexico Common Law.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**The False Claims Act, as amended, 31 U.S.C. § 3730(h)(1)-(2)**
**(Retaliation)**

50. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

51. Plaintiff had an objectively reasonable good faith basis to believe that Defendant was fraudulently submitting claims to Medicare.

52. Plaintiff engaged in protected activities by lodging several complainants to Defendant concerning its alleged submission of false claims to the United States Government.

53. Plaintiff's complaints were an effort to stop Defendant's alleged FCA violations.

54. Defendant terminated Plaintiff as a direct retaliatory result of her engagement in protected activities.

55. Defendant's conduct was in violation of the False Claims Act.

56. Defendant's unlawful conduct was willful.

### AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
### New Mexico Common Law
### (Retaliation in Violation of Public Policy)

57. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

58. Misuse of public funds is a public concern under New Mexico Common Law.

59. Plaintiff engaged in protected activities by lodging several complainants to Defendant concerning its misuse of public funds.

60. Plaintiff's complaints to Defendant concerning its misuse of public funds is an act authorized or encouraged by New Mexico public policy.

61. Plaintiff's complaints were an effort to stop Defendant's alleged misuse of public funds.

62. Plaintiff was terminated in retaliation for her complaints concerning Defendant's misuse of public funds.

63. Defendant's conduct was in violation of New Mexico Common Law.

64. Defendant's unlawful conduct was willful.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. A jury trial on these issues to determine liability and damages;

B. Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

C. A judgment declaring that the practices complained of herein are unlawful and in violation of the False Claims Act, as amended, 31 U.S.C. § 3730(h)(1)-(2), and New Mexico Common Law;

D. An award to Plaintiff of all damages which Plaintiff has sustained as a result of Defendant's conduct, including two (2) times her back pay, front pay, punitive damages, general and special damages for lost compensation and job benefits they would have received but for Defendant's unlawful retaliatory conduct, and for emotional distress, humiliation, embarrassment, and anguish;

E. An award to Plaintiff of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on back pay;

F. An award to Plaintiff of post-judgment interest, as provided by law;

G. An award to Plaintiff representing Defendant's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes; and

H. Granting Plaintiff other and further relief as this Court finds necessary and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

Dated: August 11, 2020
       Garden City, New York

Respectfully submitted,

/s/ *Sara Wyn Kane*
Sara Wyn Kane, Esq.
skane@vkvlawyers.com
Alexander M. White, Esq.
(*pro hac vice application forthcoming*)
awhite@vkvlawyers.com
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180 (phone)
(516) 706-0248 (fax)

**ATTORNEYS FOR PLAINTIFF**